Well our next case United States v. Hill Good morning Your Honor Good morning My name is Frederick Ulrich I'm an assistant federal public defender in the Hill District of Pennsylvania and I represent the appellant, Carlos Hill. I'd like to ask for two minutes of my time to reserve for rebuttal. How many minutes? Two. Two. Addressing at the outset the central issue in the case, it's our position that the district court's decision on three separate occasions to instruct the jury on a theory of joint and constructive possession when there was no substantive evidentiary support for this theory and when the government was proceeding on a theory of actual possession denied Mr. Hill a fair trial. Let me stop you right there on no substantive evidence. First of all, the government charged this in the indictment outright as a possession case, didn't charge a theory, just charged outright possession. And it, while I grant you, as I would call it in its opening and the definition of possession as that definition is set forth in the now third circuit standard instructions, all along, consistently, the government proceeded on a theory of actual possession here evidentially, did they not? That's our position. With percipient witnesses, eyewitnesses. That was their case, two eyewitnesses that had the gun pointed at them. Except for two things. Number one, their own evidence as to where this gun was ultimately found and in whose possession it was. Which is a piece of substantive evidence that can be used and from which inferences might be drawn. And secondly, the defense position. Your cross-examination and your argument all along. You offered into the record the theory, or at least the possibility of the theory of constructive and or joint possession, didn't you? I don't believe so. I think the defendants, we simply argued that this other guy. You pointed to Brown all along, aren't you? Yep, we're pointing to Brown. You contributed to this. We didn't make it any easier on ourselves. But be that as it may, it's easy to assume that this gun that was found in Brown's house might have been the same gun, but I don't think so. It was the same gun, wasn't it? Where in the record did they say it was the same gun? I didn't see any indication. Well, at the very least, couldn't a jury conclude from the evidence, which as I recall it was, there was testimony that the gun was shiny or silvery. And in fact, the gun that was found had some silvery portion to it. It was black with a silver side. Very reasonable inference for a jury to draw. And there's also evidence and argument as to the gun being in the SUV where all three of the alleged co-conspirators were together, which also could support a joint or constructive possession. I don't think there's any evidence of constructive possession in the SUV except the statement of Mr. Brown. Well, somebody said that. The recipient of witnesses testified he was brandishing a gun that he has when he gets out of the vehicle. The gun had to have been in the vehicle. Well, that's actual possession. He's got the thing on him and he comes out and he points it out to the person. That's actual possession. There's also testimony from the recipient witnesses that Brown is in the vehicle. The fact that he gets out first, right? You know, where is the testimony that Brown gets this gun other than the fact that a gun is ultimately found within his home? I don't remember anybody being shown the gun at trial saying, hey, is this the gun that was pointed at you? Nope. Let's assume for the sake of argument that this instruction is given, there's absolutely no evidence at all of constructive possession. We have case law. I mean, Griffin and Syme specifically say that's not a problem. If the court instructs on something and there happens to be no evidence of it, that that's not a problem. Griffin says, Petitioner cites no case and we are aware of none in which we've set aside a general verdict because one of the possible basis of conviction was neither unconstitutional nor illegal but merely unsupported by sufficient evidence. So what's your best case? Our best case is that the Griffin rule is a little more nuanced than the blanket rule you're discussing. If you look closely at Griffin on page 50 of the opinion, it says this rule is a presumption that applies in the absence of anything in the record to the contrary. But what we would say is there's a couple of things in the record to the contrary. The first thing is the jury comes back with a question saying, can we convict this guy of possession if the gun's not on his person? And then the second thing of record is when they come back a little while later and say, what if we just believe that Mr. Hill is in the SUV with this other guy? Any records to the contrary would probably mean then that the court might overturn it because it was, you know, there was evidence, there was insufficient evidence or on a different basis. But I just don't know how you get around the Griffin rule. Well, we don't have to get around the Griffin rule. The Griffin rule is an absolute. There's a Sixth Circuit decision in the United States v. Henning. Not the exact same circumstances as here, but they point out that if there's some indication in the record to the contrary that the jury might have relied on some theory that was unsupported, then we don't need to simply accept this presumption and assume that the jury acted according to the evidence that supported one of the counts. All right. If there's an indication that the jury did rely on something that's unsupported, that is different. So is that indication the jury's questions? Would we be here on this issue if there hadn't been the questions that there were from the jury? Well, I might be here, but you guys said you wouldn't be listening to me, that's for sure. I mean, if the jury doesn't come back and ask, it's not just the court. That's what this is all about, isn't it? I mean, the jury suggests to you that they're thinking about something other than what the government's theory was here. But the government didn't charge theories. The government charged an offense. And what could be more clear than Griffin, and this court's reiteration of Griffin in sign, the longstanding rule that if the evidence is insufficient to support a conviction on one alternative theory in a count, but sufficient to convict another alternative theory that was charged to the jury in the same count, then a reviewing court should assume that the jury convicted on the factually sufficient theory and should let the jury verdict stand. We have one colleague that would say, game, set, and match. Well, recipient witnesses point to your client. It's plenty there on the record on that theory. Well, there's plenty there that these guys both came into the courtroom and said he pointed a gun at us. But why the heck is a jury coming back and asking about constructive possession? Maybe because two of the jurors said, I don't understand this. Can we get some clarification of what this thing means? Who knows why a jury's asked? Well, if it was simply a clarification of the instructions, that might be one thing. But these questions were a little more pointed than that. And the second question certainly doesn't indicate that one juror might be holding out for some sort of clarification. It says, if we believe, that's point one, that this guy is in the SUV at the same time the gun's in the SUV, is that enough for constructive possession? Not possession, not actual possession, but constructive possession. And then they come back 46 minutes later with a verdict. But you don't know. Yeah, I mean, we cannot... Which is precisely why we have a rule we have in Griffin as reiterated by Simon. Because we can't be going through this... But we don't have to. This is a fairly unusual fact paradigm. How often does a jury come back and ask these kinds of questions? I haven't seen it happen very often. It comes back, they ask a question for a clarification on instructions, occasionally. But how often do they come back and say, if we believe that this guy's in the SUV together with a gun, is that enough for constructive possession? If we believe. Not we believe. So, I mean... What is your best authority for the proposition that the presumption in Griffin would not have us uphold the conviction? Griffin itself. They say it on page 50. There is some other evidence that suggests the jury may have relied on the other theory. Isn't that uncertainty built into Griffin and the rationale of it? Well, I think all these cases that are applying to Griffin are applying them on a silent record. I don't think there's any cases applying to Griffin on a record like this. This would be... You know, there's an exception in Griffin. We're simply saying this case falls within the exception. Looks like the Sixth Circuit recognized that that exception applies at least in some circumstances. We're saying this is a fairly unusual fact paradigm. And the jury's indicating that they're not relying on an actual possession theory. The judge acknowledged as much before she gave the instruction that... I had some doubts about giving the instruction in the first instance. But neither Griffin nor Syme carve out exceptions for unusual records, as you've just referred to. In fact, the only carve out that I recall from the cases is... Unless it's a legal error or an incorrect legal instruction that can invalidate what we have here, a general verdict, then you're stuck. I think what you're saying, Griffin, when it says, in the absence of anything in the record to show the contrary, the presumption of loss of the court-awarded sentence on the good count only, you're saying that the jury questioning is what's in the record to show that they decided it on the wrong count. In this case, yes. That's the unusual record you refer. It doesn't happen very often, but it happened in this particular case. And we're saying it falls within the exception. It looks like other courts, at least one, has applied this exception, at least in another unusual fact paradigm. What that would require is, okay, the presumption is rebutted, if you will, by the fact the jury asked a question. Then somebody has to prove that the jury did indeed, you know, the presumption's rebutted. Then what do you do? Then you have to say, oh, they did find, and that's an impossibility. That's why we have the rule we have in Griffith. Do we need to actually get the from you? What's really the problem is that there was an instruction given on a theory that was unsupported. But it was given, and no one objected to it. Instructions went in, including actual and constructive. And at that point in time, somebody should have said, Your Honor, why are you instructing on constructive possession? There's no evidence. Well, that's a problem. But what happens when the jury comes back and starts asking questions about constructive possession? Juries ask crazy, they can ask some crazy questions. They do often. And they want to satisfy themselves that they're getting it right. You know, if there's one thing I learned about watching juries up close over a lot of years, they're conscientious and they want to get it right. And they'll ask questions sometimes that aren't apparent to the trial judge or the lawyers, but they want to make sure they're getting it right. I'm not sure at this stage in my life what an unusual fact pattern is. But what I do know is that you've got two percipient witnesses here who unequivocally identify your client and the, I won't say unusual fact, but the striking fact that one of those witnesses knows your client or knew him from before, which, in my book, suggests that the possibility of misidentification is probably less than it would be in the Myron case. I think it's pretty obvious what happened here. They simply didn't believe him. They weren't credible. The one Tamara Cordish gave inconsistent versions of the events. Now, it's not unusual for a jury when a detective gets up there and starts reading a statement that was recorded from a co-defendant implicating the guy that's on trial. It's not unusual that the jury might give credence to that over two people who gave inconsistent statements. Our position is simply that it's a little unfair to apply this presumption when there's something that suggests that it wasn't applied, that the jury didn't find one. Mr. Earle, can you, in your remaining time, address the confrontation clause issue? Well, we think that, yes, that the instructional error also affected that as well. There's not a confrontation clause issue to simply introduce an impeachment state, and everybody knows that. But once it comes in without any preliminary instruction or contemporaneous instruction limiting its assessment by the jury, and once the government turns to it. But there was instruction. Not until after the government argued that the thing was substantive evidence. Then the judge stepped in and said, oh, well, wait a minute, we've got to figure out. You're talking about at the closing argument stage. Yes. This statement from Brown came in without any sort of instruction. You were reviewing for plain error? I don't think so. What happens is counsel objects to the statement coming in. At what point? Before it comes in. He says, I object, there's an exception on the record, I think it's on page. This is part of trial. Yeah, this is part of trial. And then he objects when the thing gets argued as substantive evidence. And then he objects when it gets argued as substantive evidence, and the judge attempts to remedy that with a curative instruction. And then when the jurors start coming back and it sounds like they're considering this impeachment evidence as substantive evidence in the case, he objects again to the court giving an instruction. Now what he doesn't do, but he gets an exception before that. Wait a minute, when the jury comes back and asks about constructive possession? Yes. That shows that they disregarded the statement that accused Phil. No, it shows that they accepted it. That's the evidence of constructive possession in this case. Mr. Brown saying, this guy had the gun, this Bo guy, Wes Garner, had the gun in the vehicle, and at some point passed it to Mr. Hill. That's the evidence of constructive possession. Well, that's evidence of actual possession. No, because Mr. Brown's statement is, it's Bo's gun, not Mr. Hill's. And the jury's simply giving government-edited cases of actual possession here, which they charged as to each of these guys. But, of course, as our system requires, their trials were separate, right? Or they were charged separately and tried separately. Yes. So, as I understand the government's position in this case, from start to finish, it was one of actual possession. And, likewise, they had an actual possession case against Mr. Brown because he led them into his house where they found the weapon. Right. Technically, his case would be a constructive possession case. He'd find a weapon, maybe the same weapon, under his mattress. I mean, and he's not possessing it. The actual possession is. But that's why he's charged. Well, in that case, both of these are always given. Both of these charges are always given. Well, not always. Well, when possession is charged in the indictment, usually I would think they give both. They're either or. That's what I did. I mean, you're either holding the gun and pointing it at somebody's head or it's sitting under your mattress. You would agree, however, that for some years now, not too many, but for some years, the standard instruction, to my knowledge, not yet adopted as a matter of law by this court in a panel decision, but that the standard instruction promulgated by the committee that was appointed by this court includes in its discussion of possession an explanation of both joint and constructive possession. And that Judge Rennebaugh's instruction in this case pretty much cracked that language. Yes. Given all the time. Just briefly, you mentioned on the plain error question, how does raising an objection raise a confrontation clause argument? Where was the first time that that was raised in this case? The first time the word confrontation was used was in post-verdict motions. But I think the confrontation clause thing ripens. I mean, just because an impeaching statement is introduced at trial, I mean, everybody agrees, if it's not being used for the truth of the matter asserted, there's not a confrontation clause problem. Now, once the thing starts getting argued as substantive evidence, well, then we're a little closer. And once the jury starts considering the thing as substantive evidence, I think at that point it's as ripened into a confrontation clause problem, and counsel simply filed a post-verdict motion addressing that. But how do we get around the case law that talks about limiting instructions and that the judge repeatedly advised the jury they couldn't consider this? Repeatedly? The judge gave one instruction in this case. There was no instruction that came in. Well, in any event, there was an instruction as required to follow up on Judge Rendell's question. I mean, how do you get around street? The street's a completely different fact paradigm than this. Here, the government's case didn't center on the confession of the defendant and some argument that it was coerced or fabricated in some fashion by the police. The government's case centered upon two eyewitnesses who claimed the gun was pointed at them. Does that matter? Well, I think the circumstances of, yes, it does matter because street says, well, how much did the government actually need this evidence in its case in chief? They didn't need it at all. In fact, it actually contradicted some of the evidence in their case. They're both co-conspirator cases. They're both introduction of statements of co-conspirator. Yeah, well, in street, the judge gives two instructions preliminary before the statement's admitted and then one after, and the government isn't arguing the thing as substantive evidence and the jury isn't coming back with questions suggesting that they're considering the thing as substantive evidence. When it was introduced, the statement was introduced, didn't the judge give, as a prior and consistent statement, didn't the judge give a limiting instruction there?  Yes, he did. The record reflects that the judge gave a limiting instruction. I don't think there's the limiting purpose of this statement in my general instructions. But I don't think there's a limit. I think that instruction first comes up after the closing argument. Well, I see my time's up. I can take a look at the record for that, the answer to that question. All right. Thank you. Before closing arguments. Okay. Good morning, Your Honors. My name is Meredith Taylor on behalf of the United States. I'm the assistant United States attorney representing the government in this case. All right. We'll wait for just one minute. Okay, go ahead. When was the issue, when was the jury instructed as to the limiting purpose? I believe it was at closing. At closing. Okay. In other words, there were two curative instructions given, one when the statement was made at closing and then one in the actual jury instructions that were given. That's right. Thank you. When there was discussion during the course of trial as to whether or not in the defense the letter or note of Mr. Brown would come in, trial counsel for defendant was well aware and made aware of the prospect of the government's rebuttal. Oh, absolutely, Your Honor. Well in advance. Defense counsel went into this with eyes wide open as to the implication of putting on, and in fact this was their only witness I think in the defense. That's correct, Your Honor. When was that statement, the prior inconsistent statement, when was that given to the defense? That was given to the defense when he made me aware that he was planning to use the letter from Mr. Brown that we had provided. Okay. Trial counsel was not Mr. Ehrlich too, right? That's correct. It was Mr. Thornton of the Public Defender's Office. So while one of your arguments was it wasn't Brady, but that's because it wasn't turned over initially. That's correct, Your Honor. Thank you. Regarding the issue of the joint and constructive possession jury instruction, Your Honors are certainly correct. Carly still had actual possession of the gun in this case. He pointed at the victim, and there were two eyewitnesses who identified him as the person pointing the gun, and they did testify at trial. Your Honor also correctly acknowledges that the indictment charged both Mr. Brown and Mr. Hill as co-defendants with possession of the weapon. So appellants certainly had notice very early on of a joint indictment, and the cases were severed based on the confession of Mr. Brown. Can you focus for us on the point that your colleague has made that Griffin and Symes are a presumption? There's language in Griffin that suggests that there is some case out there where the evidence might rebut that presumption. Why aren't the not one but two questions asked here by the jury suggesting that they are honing in on the question of constructive possession sufficient to rebut that presumption? I think, Your Honor, using the questions that the jury asked in this case, or quite frankly in most cases, is just a leap too far to assume that they rebut the presumption that's mentioned in Griffin. There's no way, taking those questions out of context and parsing them at this point, there's no way for this court or for counsel to know what was going on in the jury room, what was going on in the minds of the jurors, or why those questions were even asked. As Judge Rambo noted in her opinion, it could have simply been that they were asking for clarification on the law of constructive possession, not that that was the basis for their conviction. Frankly, it's just too speculative for the court to rely on the jury questions to make that determination. And I think Griffin also is very clear, particularly on page 59, that it simply doesn't matter. When it says, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction. I think that language in Griffin makes it very clear, and, of course, then the adoption by this court in Syme that claims regarding the sufficiency of the evidence just simply don't rise to the level of what would be legally invalid or unconstitutional and require a reversal. We said in Adamson v. Cathel that the, in the Confrontation Clause context, that the risk of prejudice that stems from introduction of a co-defendant statement was so high that, in some cases, even a limited instruction would not be sufficient to cure it. Why wouldn't the government's improper argument here suggesting the jury could take as substantive evidence the statements of Brown present such circumstances? Well, the United States' position is that the argument that I made in closing was not commenting on the Brown letter and then the subsequent confession, asking the jury to consider it as substantive evidence. I certainly will concede that if you look at my closing as a whole, that the timing of... And that's what Mr. Hill was charged with here today. That's the problematic language. That is the problematic language, Your Honor. And I certainly would concede that the timing of that statement was inartful and certainly the juxtaposition of my comments, which it is my position that that comment began essentially my summation of my closing argument. I was summarizing my opinion of the evidence at that point, not making a direct reference to the comments I had just made about the Brown letter and then the confession. Now, as I said, the timing is very unfortunate in this case because it does appear with that juxtaposition that those summary comments could have been interpreted... I concede they could be interpreted as referencing the Brown evidence, but that certainly wasn't my intention. Isn't the Adamson case more in the Bruton line? You know, you had a statement that implicated... And those cases where there is a joint trial, you know, under Bruton it's not allowed. That's different from a statement that's not really a confession as to him, but implicates another in a severed trial. I mean, I think there's a distinction. Yes, Your Honor. I think that's certainly what the issue was in Adamson. And, of course, in addition, in Adamson there was no limiting instruction given. And it would be... I mean, that's why Bruton is what it is, because it's tough to limit when somebody has given a confession and says, well, I did it, you know, but I didn't do it alone. It's a little more of a ring of, you know, baring their soul as compared to it was him. Absolutely, Your Honor. And that's certainly the problem that would have arisen... the Bruton problem that would have arisen in this case if we had attempted to try Mr. Brown and Mr. Hill together is certainly why the government agreed to the severed trials. And, as the Court is well aware, Mr. Hill and his counsel put the Brown letter at issue. And was the limiting instruction given early enough? I mean, when the inconsistent... it comes in as a prior inconsistent statement. I mean, that's how it's admitted, but the Court doesn't say anything about how the jury is to consider it. Is it a little late at closing to say, oh, by the way, you know, that statement you've been considering as evidence for three days, you know, by the way, you can't consider that. I mean, I've been a juror, and it's very tough to undo, you know, something that has gone into your thought process. Well, Your Honor, I certainly understand. If the district court had given a limiting instruction prior to the introduction of... No, Your Honor. It certainly would, I would imagine, have made it more clear for the jury of how they were to use that evidence. But I don't, it's certainly not required, and Judge Rambo addressed it in her final charge to the jury, as well as just after my statement in closing argument. And she did give an extreme... to your closing argument or during the course of your closing argument? That's correct, Your Honor. Mr. Thornton asked to approach the bench. I'm sorry, I didn't hear that. Mr. Thornton asked to approach the bench, I believe, and it's at that point that, in fact, he moves from this trial. That's correct, Your Honor. And it's at that point Judge Rambo says I'll cure it with an instruction. But that is the first point. Yes, Your Honor. And that's page 347 in the appendix that it's right. Yes, Your Honor. And Mr. Thornton does not make the objection just after I made the statement. He does wait until the end of my closing, I think, as a courtesy. But it was extremely close. That statement was made just seconds before my closing ended, and then Mr. Thornton interposed the objection. And Judge Rambo immediately gave a very thorough, what the government would argue is a very thorough, limiting instruction, all page 347, indicating that the statement is a prior and consistent statement, that you can use that in determining the credibility of the witness, Mr. Brown. That is all. She follows that up by saying it's not substantive proof that he's admitting, do you understand, or that he is saying that Mr. Hill had the gun. It is used only to show an inconsistent statement made by this person. And you can consider that in determining whether to believe his testimony or not. But that is timing that's of more concern from a confrontation clause perspective, right? Because, I mean, you suggest it's in street, the judge had twice before the admission of the statement advised the jury about the limited purposes that it would serve. Here, not only is it after the fact, but like in Richardson v. Marsh, it's after the judge admonished counsel to be careful about how this evidence was used. You are certainly correct in terms of the timing. It was after the statement that I made, and then again when the judge finally charged the jury, she did address it again. We would have to say it's plain error for him, for her, to not sua sponte, give a limiting instruction when it was used as a prior inconsistent statement before. That's right, Your Honor. You'd agree with this timing that there's reason to be more concerned about a confrontation clause violation with this sequence? We are. Honestly, the timing, because of the statement at issue that I made, and that's what Mr. Hill was charged with here today, was in summation to my closing argument, again, not a reference to what I had previously been commenting on the defense's evidence and then the statement that was put in rebuttal. I do understand that the timing is unfortunate. I'm not sure it necessarily raises any additional confrontation clause concerns or that the timing of it makes it any more likely that a confrontation clause issue arose. Well, why doesn't Richardson v. Marsh compel reversal where the court there remanded because it determined that the prosecutor was seeking to undo the instruction that the court had given? It's a joint trial. Yeah. Would you say that's limited to the context of a joint trial? Isn't the fact that the statements here were given after the admonition to counsel put the evidence here in a similar light? Well, Your Honor, I think that the facts of Richardson v. Marsh are significantly different. Do you see the line of Bruton, Richardson, Gray as being applicable here? No, Your Honor. Why not? Because it was a severed trial and because the statement of the codefendant came in as a prior, at least the portion of the statement that came in, which was not the entire confession, but the portion that Judge Rambo allowed in was introduced simply as a prior and consistent statement. Your Honor, in response to your question about Richardson v. Marsh, I do believe that it is significantly different from the facts of this case, primarily because it was a joint trial, and that implicated, I think, different concerns than what we had in this matter. If the court has no further questions, thank you for your time. Thank you. Thank you. Just one point of clarification. There was a question asked about whether these statements from the codefendant were provided to counsel. They were not. It's on page 314 of the appendix. Counsel says, I don't have either one of these statements. That's at what point during the trial? Right before they're introduced. Yeah. I mean, it's obviously once the testifies to this. What you do, of course, when that happens is if you feel you're adversely impacted by it or even prejudiced, you ask for a recess, even a continuance to deal with it, right? True. And that didn't happen. It didn't happen. I mean, our position really is this is fundamentally a confrontation clause. Could you give me that appendix reference again? It's on page 314. There's a back and forth discussion with the trial judge as to whether Mr. Thornton is asking for the statement and says, I don't have either one of them. Okay. And if defense counsel thought it really was a Brady violation, it would have even been possible to move from this trial at that point. It could have been, although if you don't have the thing in front of you and all of a sudden they get up and start talking about a statement that he gave to the police in some sort of formal recorded setting and you realize at that point that it's inconsistent with some of the other evidence in trial, suppose a Brady violation materialized and perhaps at that point counsel should have objected. But be that as it may, our position is that it doesn't really make any difference whether this is a joint trial or not. For purposes of confrontation clause analysis, you've got a co-defendant statement coming in. It's incriminating the client. And that's a confrontation clause. You don't think it makes a difference, the fact that you've got two people sitting there perhaps side by side or they're counsel and they are side by side and one doesn't get up and testify but instead a statement of his is used while his co-defendant sits there and they both sit there? You don't think that's a pretty significant difference? I think it's a difference. But if they're both charged in the indictment and one guy happens to not be there and one guy is and they're bringing in the statement, I don't think it substantively makes a whole lot of difference. If it's incriminating you, it incriminates you either way, whether the guy is sitting beside you and not talking or whether he's outside the courtroom. It makes a big difference to the jury sitting there looking at those fellows. Thank you, Your Honor. Thank you. And how in the world did you ever get on a jury, Judge Randall? That's what I want to know. Well, before I was a judge I was. Well, that's not obvious. I've been almost picked for a jury, but for the fact that I had a sitting coming up, I probably would have. Have a good trip back to Harrisburg, counsel. Thank you, counsel. Peace is well argued.